## CONFORMITY REQUIRED AS TO A CONDITION FOR APPRAISAL UNDER FIRE INSURANCE POLICIES.

Circuit Court of Cuyahoga County.

THE COMMERCIAL UNION ASSURANCE COMPANY, LTD., OF LONDON, ENGLAND, v. H. M. WEINBERGER.

Decided, November 20, 1912.

*Insurance—Performance of Condition as to Appraisal Pre-requisite to Action on Policy.*

Where a policy of fire insurance provides that in case of disagreement as to the amount of loss, the amount shall be determined by arbitration, such provision makes the obtaining of an award, or at least an attempt in good faith to obtain an award, a condition precedent to a right of action on the policy; and in an action upon such policy the burden is upon the insured to show that he has, on his part performed, or offered to perform, the condition as to the appraisal.

*C. W. Fuller* and *L. R. Canfield,* for plaintiff in error.
*Hidy, Klein & Harris,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

Weinberger was plaintiff below and recovered a judgment against the assurance company for loss by fire on goods covered by four policies of insurance issued by the company. The parties plaintiff and defendant are spoken of in this opinion as they stood in the court below.

Each policy contained the following clauses:

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their difference to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the ap-

praiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements.

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

In its answer the defendant set up these clauses and averred that there was a disagreement between the parties as to the amount of loss under each of said policies by reason of said fire, and that there had been no appraisement of the same as required by said policies of insurance.

For a reply the plaintiff denied that there had been any disagreement between the plaintiff and the defendant as to the amount of such loss by fire, and says that never until the bringing of this suit did the defendant make any objection to the amount claimed, and that never until the filing of its answer did it deny or dispute the amount of loss sustained by reason of the fire, and as shown by the proof of loss filed. He admits that there has been no appraisal of the amount of the loss, and says that he repeatedly requested the defendant to submit to an appraisement, and that he selected an appraiser to act for him, and that he gave to the defendant the name of said appraiser, and requested the defendant to select and name its appraiser, which it refused to select and name, and thereby waived any right to insist upon such appraisement.

An examination of the evidence shows that the plaintiff employed as his agent one E. M. Lee, and he testified in regard to such employment in these words:

"Mr. Lee came out to see me several times; he would like to have my claim to adjust, as he said I did not know how to go

about it.  He said he has been an experienced man in that line of business, so I let him adjust my claim.''

He was then asked:  ''You hired Mr. Lee to adjust your claim?''  He answered:  ''Yes, sir.''

He was then asked:  ''Now, after that, did you have anything to do with the adjustment of the loss aside from doing whatever Mr. Lee directed you to do?''  To which he answered:  ''Yes, sir.''

He clearly meant by this, ''No, sir,'' for the next question is: ''That is what you did.''

And the answer is: ''Whatever Mr. Lee told me, I done.''

And later on in his evidence he was asked: ''What did Mr. Lee and the other gentleman do?'' (referring here to the representative of the insurance company).

To this he answered: ''I don't know what he done:  I turned the whole thing over to Mr. Lee and I didn't pay any attention to it at all.''

It seems that the man to whom he referred as the other gentleman was Mr. C. F. Barnard, who was employed by the defendant to represent it in the adjustment of the loss had by Mr. Weinberger under the several policies on his stock of goods.  He testifies that Mr. Lee came to his office, told him that he had been employed by Weinberger to make up his proofs of loss, as he called them, and render services to this man along these lines, adjusting the loss or making up his claim.  He says he made an examination of what remained and an estimate of what had probably been destroyed; that Lee came to him and presented him the proofs of loss, showing the loss to be in the aggregate $5,463.  He says that before Mr. Lee presented him with this proof of loss he had numerous talks with him in which he told him that it was perfectly apparent that there was a limited amount of stock and that it could hardly be possible, in his judgment of the ruins and condition of affairs, that there could have been as much in the fire as the goods that were taken out during the fire.  He says that when the proofs of loss were brought to him by Mr. Lee he looked over the inventories and then, to quote his words:

"I told him that the amount of loss claimed was, in my opinion, absurd, and in the course of these conversations expressed my-self that the loss sustained over and above the stock saved in an undamaged condition could by no means amount to as much as $1,000. I remember using that figure, and stated to him that my judgment perhaps would indicate that it was rather less, than more than that amount."

He says that in later conversations he had with Lee:

"I told him that I was entirely willing to discuss a compromise settlement if it came to that kind; I believe I went so far as to say that if he wanted to settle the claim inside of $1,000, it might be done. I told him that if he chose to compromise the case on an amount in the neighborhood of $1,000 I might discuss it with him from that standpoint, basing that as the probable amount of the man's loss."

He says that he and Lee got together and tried to adjust and fix the amount of the loss. "He said that the proposition of compromise which I made, based upon my judgment of amount, could not and would not be accepted."

He says that Lee said to him: "Why don't you have this loss appraised and relieve yourself of the trouble of it."

I said: "Of course, when the proper time comes and when proper action is taken by these parties, that will be done, for the reason that I have no power, no disposition and no power par-ticularly to waive or set aside the policy conditions along those lines."

In answer to a question as to whether Mr. Lee or anybody representing the plaintiff ever suggested an appraisal to him, he said "No," and in this connection this question was asked him:

"Didn't he name to you Mr. J. J. Klein, a gentleman living on Buckeye road, as an appraiser of the plaintiff here?" To which he answered: "Never heard of the man before; there was no conversation relating to that sort of proposal at all so far as I recollect."

He says that after the proofs of loss were filed Mr. Lee stated to him that that ended his connection with the case—the service of these proofs of loss which he did not make upon the company

but left at his office. ''He stated when he left the proofs at my office, that that ended his employment in that case. He stated he had got his money and that ended the case so far. as he was concerned.''

He stated that he never had any communication with Mr. Weinberger with reference to the matter; never saw him until the time of the trial.

For some reason Mr. Lee was not called as a witness in the case. From the evidence that was produced, it seems perfectly clear that there was a disagreement between Mr. Barnard, the representative of the company, and Mr. Lee, whom the plaintiff says he employed to attend to the entire business for him, as to the amount of this loss; that therefore the provision of the policy to which attention has been called in reference to an appraisement, came into force; that the plaintiff made no effort to have an appraisement, but, as he says, because Lee told him there was nothing for him to do now but to sue, he brought this suit.

We think he brought his suit too soon. He should have given notice for an appraisement under the clause of the policy quoted. Not having done that, he failed to sustain the burden which was upon him. We are not surprised that the trial judge felt, as he expressed in his opinion on the motion for a new trial, that if there was not another tribunal to review the record in the case, the court would feel constrained to grant a new trial. We have read the opinion of the court with decided interest, and with most of it we are in entire accord. We think the reasoning in the opinion clearly shows that a new trial should have been granted, because the verdict was not sustained by the evidence, and not sustained by the evidence because it showed that there was a disagreement between the parties as to the amount of loss, and failed to show that there had been any effort made by the plaintiff to have an arbitration.

That this suit was not maintainable under the facts as shown by the evidence hereinbefore pointed out, is fully sustained by the last utterance on the subject by the Supreme Court in the case of *Graham* v. *Insurance Co.,* 75 O. S., 374.

In the policies under consideration in this case, the same provisions for arbitration appear as in the case before us, and it is held that where disagreement arises as to the amount of the loss, under such policies:

"These policies plainly and definitely make the obtaining of an award or at least an attempt in good faith to obtain an award, a condition precedent to a right of action on the policy; and it is elementary that the obligation of taking the initiative or of showing an excuse for not doing so, is upon the party who has the affirmative in the action."

The second paragraph of the syllabus reads:

"In such a policy the words 'including an award by appraisers when appraisal is required,' do not impose any obligation on the insurer to demand an appraisal; but in the event of a disagreement between the insurer and the insured as to the amount of the loss, an appraisal is required by the terms of the contract, and in a suit on the policy the burden lies upon the insured to show that he has, on his part, performed, or offered to perform, the condition as to the appraisal."

In this case the evidence, as already pointed out, shows no attempt on the part of the plaintiff to obtain an award, nor is any excuse for failing to do so shown, and the court erred in refusing to direct a verdict for the defendant at the close of the plaintiff's evidence, and again in refusing defendant's motion to direct such verdict at the close of all the evidence, and again in overruling the motion of defendant for a new trial, on the ground that the verdict was against the weight of the evidence.

For these reasons the judgment is reversed and the case remanded.